

**Signed and Filed: June 26, 2024**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re | ) Bankruptcy Case |
|---|---|
| | ) No. 24-30082-DM |
| CHRISTOPHER MICHAEL CALLAWAY, | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| | ) |

**MEMORANDUM DECISION REGARDING MOTIONS TO DISMISS CASE FOR CAUSE**

**I.   INTRODUCTION**

On March 29, 2024, creditor M. Dattani Credit Trust ("Dattani Trust") filed its Motion to Dismiss Case for Cause 11 U.S.C. § 707(a) ("Dattani Motion") (Dkt. 15). On April 18, 2024, Tracy Hope Davis, United States Trustee for Region 17, filed her Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(a) ("UST Motion" (Dkt. 25), together with the Dattani Motion, the "Dismissal Motions").

The Dismissal Motions seek dismissal of this case under Section 707(a)[1] for "cause" and both rely on similar arguments.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-1-

The Dattani Motion says there is cause for dismissal "because the assets of the estate are comprised of or derived from cannabis." (Dattani Motion, p. 1). The UST Motion explains that the cause for dismissal is that the Debtor "possesses and controls an interest in cannabis assets and business ventures that are in violation of the Controlled Substances Act 21 U.S.C. Sections 801-904 ("CSA"), and which a chapter 7 trustee cannot lawfully administer." (UST Motion, p. 1).[2]

The Dismissal Motions do not allege or contend that the Debtor lacked good faith in filing his chapter 7 petition, do not challenge his eligibility under Section 109(b) to file a chapter 7 petition, do not allege that he directly owns marijuana or marijuana-related tangible assets, and do not contend that any of the statutory examples of "cause" for dismissal under Section 707(a) exist.[3] Neither relies on Section

---

[2] "The word 'marijuana' refers to parts of or products from the plant *Cannabis sativa* that contain substantial amounts of tetrahydrocannabinol (THC)," the compound for which marijuana is famous. https://www.nccih.nih.gov/health/cannabis-marijuana-and-cannabinoids-what-you-need-to-know. The word "cannabis" refers to all parts of the cannabis plant. The parties, and most caselaw, appear to use the words interchangeably to mean parts of the plant with substantial amounts of THC. Without further citations, the court notes there is a general preference for the word "cannabis." Unless using a direct quote or referring to the way Debtor refers to his interests in his schedules, the court will use the word "marijuana" in this Memorandum of Decision.

[3] Section 707(a) states:
(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
   (1) unreasonable delay by the debtor that is prejudicial to creditors;
   (2) nonpayment of any fees or charges required under chapter 123 of title 28; and

-2-

105 or any inherent powers. Instead, the sole basis for each of them to seek dismissal is as the UST summarized: The chapter 7 trustee cannot lawfully administer assets in violation of the CSA, and continuation of the case would force the chapter 7 trustee into such a position.

The chapter 7 trustee, Paul Mansdorf ("trustee"), who urged Dattani Trust to file the Dattani Motion, has joined in the Dismissal Motions (Dkt 36). He stated:

> ". . .although a Chapter 7 Trustee would like nothing more than to be able to administer an asset case, it is clear that he would be subject to prosecution in any attempt to administer the assets of this particular estate. Pursuant to the UST's motion, "a chapter 7 trustee cannot lawfully administer (cannabis assets.)"

Based on the facts of this case and applicable law, the court holds that administering the ownership interests of LLCs that engage in marijuana business is not necessarily equivalent to administering marijuana assets. The court also holds the trustee's own personal determination that he cannot lawfully administer the assets of this case is insufficient cause to dismiss the debtor's case as there are other options for the trustee as discussed, *infra*.

For the reasons that follow, the court denies the Dismissal Motions.

---

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

-3-

## II. FACTS[4]

Debtor Christopher Michael Callaway filed for chapter 7 on February 12, 2024. He has never filed under any other chapter of the Bankruptcy Code and has made no attempt to convert this case to any other chapter. His Schedules and Statement of Financial Affairs (Dkts. 1 and 12) indicate that he owns and operates 100% of Caliverde, LLC ("Caliverde"), a retail cannabis dispensary in San Francisco, and owns a 40% interest in Grassy Castro, LLC ("Grassy Castro"), another retail cannabis store in San Francisco. Debtor also owns interests in other LLCs, some operating, some no longer operating, some never operated, some, but not all, related to cannabis. One of the LLC interests is a 61% ownership of Mr. C's, LLC ("Mr. C's"), an art gallery/flower shop/cannabis dispensary that has never operated as a dispensary due to circumstances that led to litigation by Dattani Trust against Debtor and others in the San Francisco Superior Court. That matter was about to go to trial when Debtor filed his petition.

The Schedules show some other assets of very slight value, or values unknown, including intangibles such as domain names[5],

---

[4] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

[5] Domain names: jodolphins.com, tracknappers.com, tracknaps.com, outerhayes.com, blaze-valley.com, project-flowers.com, theouterhaze,com, porn.com, hazevalley.com, petitfleur.com, pot-monster.com, snarcs.com, highroadbikes.com, caliverde.com, oasis-delivery.com, haze-valley.com, blazevalley.com, hybryd.com, indica.com, sativa.com, potmonster.com, chris-callaway.com, christopher-callaway.com, postmonster.org, lafrum.com,

which collectively are claimed as exempt on Schedule C under the California wildcard exemptions of less than $30,000.  There are no tangible assets listed that bear any connection with marijuana plants, marijuana equipment or anything else covered by the CSA.  This is for good reason: all those assets are likely owned by Caliverde, Grassy Castro or other LLCs and as such, are not property of the bankruptcy estate.

The only other noteworthy item on the Amended Schedule A/B (Dkt. 12) is "Claims for distributions owed as minority owner of Grassy Castro LLC" in an UNKNOWN amount.  Debtor has never received any distribution from Grassy Castro or its owners in the past.  Debtor did explain at his Meeting of Creditors that Grassy Castro's yearly revenue is in the ballpark of three million dollars (Dkt. 15-1) and he assumes that his claim for distributions from it are in the ballpark of "several hundred thousand dollars."

As of the petition date to the present, the trustee owns those claims under Section 541 and would be expected to seek to recover any money owed to the estate.

Debtor also reports on Schedule I his monthly income from Caliverde but as of and after the moment he sought bankruptcy protection, none of his post-petition income was property of this estate and is not subject to the control of the trustee.  Section 541(a)(6) excepts from property of the estate ". . .earnings from services performed by an individual debtor

---

coke.com, joydolphins.com, lilnappers.com, lilnapperz.com, fleurlocale.com, lefleur.shop, grandefleur.co, kidsvalley.co, highroadcoffee.co, vinoflores.com, hazevalley.co, caliverde.co

after commencement of a case". Debtor's post-petition income as someone employed in the marijuana business, therefore, does not bear upon the question of whether there is cause to dismiss Debtor's chapter 7 bankruptcy. That he is also the owner and partial owner of marijuana-related LLCs does not matter either, because the trustee is the owner now and it is his choice, not the Debtor's, whether to sell the ownership interests, and sale of those ownership interests may not violate the CSA in any event or may otherwise be restricted by the respective LLC's articles of incorporation. Nothing in the record presented sheds any meaningful light on these questions. Debtor's own statements at the Meeting of Creditors, while made under oath, have not been confirmed or tested for foundational legal or factual accuracy by the trustee or anyone else.

### III. DISCUSSION

**A. The CSA**

The CSA is a statutory scheme that regulates nearly every facet of the manufacturing, distribution, and dispensing of controlled substances. 21 U.S.C. § 841 *et seq*. For now, marijuana products remain a Schedule I controlled substance under the CSA, the most tightly regulated classification of controlled substances.[6]

---

[6] As of June 2024, the Justice Department has submitted a proposed rule change that would reclassify marijuana as a Schedule III substance, but that change has not yet gone into effect. See https://www.justice.gov/opa/pr/justice-department-submits-proposed-regulation-reschedule-marijuana.

-6-

In addition to the prohibition on most actions related to the manufacture and distribution of marijuana, the CSA, in brief, prohibits the following in relation to those activities:

- Using the internet, or aiding or abetting use of the internet to engage in marijuana business. 21 U.S.C. § 841(h).
- Conspiring or conspiring to commit marijuana business. 21 U.S.C. § 846.
- Engaging in the marijuana business in an organizational, supervisory, or management role and deriving substantial income or resources from that role. 21 U.S.C. § 848.
- Investing proceeds of marijuana business in securities on the open-market or any other enterprise that may affect interstate or foreign commerce. 21 U.S.C. § 854.
- Deriving profits or proceeds from marijuana business. 21 U.S.C. § 855.
- Leasing or maintaining, owning, or occupying any space that is used for marijuana business. 21 U.S.C. § 856.

Most relevant to this case is that each of these sections of the CSA prohibit direct acts or benefits as they relate to engaging in marijuana business. None of these prohibitions, or others in the CSA, even when directed to be read as broadly as possible, 21 U.S.C. § 854(d), include a direct prohibition on owning or disposing of an interest in an entity that engages in

marijuana business[7], or owning other intangible assets of such as domain names with catchy words conveying messages about marijuana.

As it relates to marijuana, the Justice Department has for years taken both an implicit and explicit hands-off approach to enforcement of the CSA as it relates to state-regulated manufacture and distribution.[8] This hands-off approach has been in place in various iterations since 2013, and marijuana businesses that adhere to state and local laws permitting such business have grown. In 2024, it seems the only arm of the executive branch with an explicit mission to enforce the CSA against state-regulated marijuana businesses is the UST Program in seeking to dismiss bankruptcies on the basis of a trustee or estate's potential administration of assets in violation of the CSA.[9]

Like many people and businesses involved in any industry, those people and businesses engaged in marijuana business at the state-regulated level sometimes face economic hardship and seek economic relief in the form of a fresh start via bankruptcy.

---

[7] Caliverde and Grassy Castro no doubt are at least deriving revenue or proceeds, and likely profits, from marijuana and are therefore violating the CSA, but this is for another branch of the Department of Justice, not the UST, nor this court, to be concerned about. Nor is it relevant to the question of whether cause exists to dismiss Debtor's bankruptcy.

[8] See https://www.jdsupra.com/legalnews/attorney-general-garland-reconfirms-the-9983989/.

[9] *Why Marijuana Assets May Not Be Administered In Bankruptcy*, Clifford J. White III and John Sheahan, 36 Am. Bankr. Inst. J. 34 (Dec. 2017).

As a result, there is a growing body of cases of debtors involved in some way with marijuana. Each of these cases is essentially a fact-driven matter of first impression. Against that backdrop, the court in each bankruptcy weighs whether and how the CSA applies, and how and whether that application creates such a problem of legality that an otherwise eligible debtor can or cannot seek the fresh start of a bankruptcy discharge that would otherwise be available absent connections with marijuana.

B. Cause to Dismiss

One of the bedrock principles of our bankruptcy law and system is that the honest but unfortunate debtor is entitled to a fresh start. *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018) ("One of the 'main purposes' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.'") (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918) (internal formatting omitted))); *Grogan v. Garner*, 498 U.S. 279, 286-87 (1994) ("the [Bankruptcy] Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.') (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).

Another well-established principle is to refrain from applying statutory mandates in a contradictory manner. For example, in *Law v. Siegel, 134 S. Ct. 1188 (2014)*, the Supreme Court declined to contravene expressed provisions of the Bankruptcy Code regarding administrative expenses on the one hand and exemptions on the other hand and held that a debtor's

-9-

Case: 24-30082   Doc# 44   Filed: 06/26/24   Entered: 06/26/24 17:49:42   Page 9 of 19

exempt property could not be used to pay those administrative expenses notwithstanding debtor's egregious conduct that was not related to his exemption claim. Stated otherwise, the provisions of the Bankruptcy Code regarding exemptions would not give way to another section of the Bankruptcy Code that permitted allowance of administrative expenses.

Another familiar principle is a rule of construction found in Section 102(3): "includes" and "including" are not limiting. Thus, in Section 707(a), the causes that justify court's dismissal include, but are not limited to, the subsection's three enumerated events listed *supra* at fn. 3.

In chapters 11, 12 and 13, there are longer lists of examples of what constitutes cause justifying dismissal, but almost all, without exception, are based upon conduct, or the absence of conduct, by the debtor or some other representative of the estate. See Sections 1112(b)(4); 1208; 1307(c).

There is a "stated reluctance in this Circuit to adopt *per se* bright-line rules requiring the immediate disposition of bankruptcy cases in which marijuana activity is present[.]" *Burton v. Maney (In re Burton)*, 610 B.R. 633 (9th Cir. BAP 2020). "Congress did not adopt a 'zero tolerance' policy that requires dismissal of any bankruptcy case involving violation of the CSA (or other activity that might be proven to be illegal.)" *In re Hacienda Co.*, 647 B.R. 748, 754 (Bankr. C.D. Cal. 2023); *see also In re Blumsack*, 657 B.R. 505, 515 (BAP 1st Cir. 2024) (citing *Hacienda* for the proposition that Congress has not adopted a zero-tolerance policy that requires dismissal for any violation of the CSA, and going on to state "[t]hat type of policy choice to close the

-10-

Case: 24-30082    Doc# 44    Filed: 06/26/24    Entered: 06/26/24 17:49:42    Page 10 of 19

doors to the bankruptcy court categorically, without regard to individual circumstances, is one more appropriately left to the legislature."). To repeat, Section 109(b) does not lock the bankruptcy court's doors to exclude individuals in the marijuana business.

Taking all these points into consideration, before this court will dismiss debtor's case for cause, it needs to locate any causal connection linking the debtor to whatever dire outcomes the statute and the context either specifically or inferentially identify. Here is where the Dismissal Motions fall short of the mark.

The only cause asserted is the Debtor's ownership interests in LLCs involved in the marijuana business when he filed bankruptcy, and the resulting duty of the trustee to administer some of those assets that he believes will result in his violation of federal law. Debtor has played by all of the rules of the bankruptcy game so far and as noted above, it is not Debtor's pre- or post-petition conduct but the trustee's anticipated actions alone which the Dismissal Motions hold out as cause for dismissal.

**C. Marijuana Cases and the Debtor**

Most of the reported decisions cited in the Dismissal Motions and by the Debtor arise in chapter 11 or chapter 13. *See Hacienda,* 647 B.R. 748 (Bankr. C.D. Cal. 2023); *In re Blumsack*, 657 B.R. 505, (BAP 1st Cir. 2024); *In re Johnson*, 532 B.R. 53 (Bankr. W.D. Mich. 2015); *Arm Ventures, LLC*, 564 B.R. 77 (Bankr. S.D. Fla. 2017); *In re Way to Grow, Inc.*, 597 B.R. 111 (Bankr. D. Colo 2018); *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R.

-11-

799 (Bankr. D. Colo. 2012); *In re Mayer*, 2022 WL 18715955 (Bankr. D. Ariz. Jan. 31, 2022); *In re Kittrell*, 2020 WL 6821720 (Bankr. D. Ariz. Oct. 6, 2020). In these cases, the courts deal with the actual or anticipated post-petition conduct expected of the debtor, the debtor-in-possession or the chapter 13 trustee, almost entirely in the context of use of income or funds from businesses that are in violation of the CSA during chapter 11 reorganization or administration of a chapter 13 plan. Those cases, therefore, but not chapter 7 cases, present a different and difficult issue is whether the bankruptcy court and the court appointed bankruptcy trustee should play a role in the continued administration of income derived from a marijuana business.

Other chapter 7 cases are also distinguishable from this Debtor's situation: *Arenas v. U.S. Tr. (In re Arenas)*, 535 B.R. 845 (10th Cir. BAP 2015) (dismissal of chapter 7 was appropriate because trustee would have had to administer rental income from marijuana business as well as proceeds of the joint-debtor's personal cultivation and sale of marijuana); *In re Great Lakes Cultivation, LLC*, 2022 WL 3569586 (E.D. Mich. August 18, 2022) (corporate debtor's business consisted entirely of the growth and sale of medical marijuana, bankruptcy court's finding that cause for dismissal was appropriate because chapter 7 trustee could not lawfully administer the assets of the debtor corporation); *In re Medpoint Management, LLC*, 2016 Bankr. LEXIS 2197, 2016 WL 3251581 (9th Cir. BAP June 3, 2016) (substantially same to *Great Lakes*, except debtor managed another corporation's marijuana operations). *In re Malul*, 614

-12-

B.R. 699 (Bankr. D. Col. 2020) (debtor sought to schedule previously undisclosed marijuana business investments and related causes of action in her reopened chapter 7 case solely to compel trustee's abandonment of those assets as a means to strengthen her position in state court litigation).

Because Debtor is the named operator of Caliverde, the trustee may cease those operations immediately if he deems that appropriate and necessary. Debtor does not receive rental income from a marijuana business, nor does he personally cultivate marijuana. Debtor is not hiding his interests in marijuana businesses, nor is there any indication that his bankruptcy filing was part of a litigation strategy other than stemming the tide of a run-of-the-mill contract dispute with Dattani Trust. Whether the trustee chooses to abandon assets after his own analysis is discussed below, and is distinguishable from the debtor's attempts to manipulate the bankruptcy system as in *Malul*.

Here, Debtor is separate from the entities that engage in the marijuana business, meaning the trustee is not in danger of having to administer the actual tangible marijuana assets held by those businesses. Neither entity is in bankruptcy, nor are their tangible assets.

While it is true that realizing profits from a marijuana business is prohibited by the CSA, there is nothing presented by the parties, nor discovered by the court, that suggests that monetizing an intangible ownership interest is the equivalent of profiting from a marijuana business. The words of the CSA

simply do not reach as far as the authors of the Dismissal Motions might prefer.

Under California law, shareholders "neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy interest in each, and he becomes the owner [upon a liquidation action or declaration of a dividend]") *See Miller v. McColgan*, 17 Cal.2d 432, 436 (1941); *see also In re Pettit*, 217 F.3d 1072, 1078 (9th Cir. 2000) ("bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case.")[10]

This separation from the CSA-prohibited products and proceeds is important regarding both the equity ownership of Caliverde and the claim for distributions from Grassy Castro. First, no one – not the Debtor, not the Dattani Trust, not the UST, not the trustee - have analyzed either the legal possibility or the financial likelihood of realizing value by sale of the ownership of Caliverde, including its name, goodwill customer list and other intangibles. They do not on their face appear to implicate the CSA.

As for Grassy Castro, only the Debtor has opined as to what he thinks of his claim against his co-owners. The trustee and movants have taken this opinion as fact without further investigation or analysis, despite Debtor's other statement that

---

[10] For a very recent example of how the Ninth Circuit dealt with this separation of an owner from the assets of a corporation, see the unpublished decision *Kasolas v. Aurora Capital Advisors et al. (In re Brower)*, 2024 WL 2826283 (9th Cir. June 4, 2024).

-14-

his co-owners have stated that there has not yet been any profit derived from the business that could be distributed.

The case that is most factually related to Debtor's situation is *In re Burton*. In *Burton*, the joint debtors were individuals who held a 65% membership interest in a corporate marijuana business called Agricann, along with one of the joint debtors being the manager and president of the business. *Burton* at 634. The debtors filed chapter 13 and listed their interest in Agricann, as well as a cause of action Agricann held against another entity. *Id.* Agricann commenced litigation while the debtors tried and failed multiple times to confirm a chapter 13 plan. *Id.* at 634-35. Faced with a motion to convert the case to chapter 7, the bankruptcy court determined that conversion would force a chapter 7 trustee to administer a potential recovery, and that recovery would constitute marijuana assets in violation of the CSA. *Id.* at 639. The bankruptcy court concluded that debtors' ownership interest in Agricann and thus the trustee's forced administration of the "tainted" proceeds of the Agricann litigation was "cause" for dismissal. *Id.* at 639.

The BAP held that "[t]he bankruptcy court did not err in this finding, nor did it abuse its discretion in dismissing the case on those grounds."

This case is instructive, but as with others, turns on the facts presented. The bankruptcy court found not credible the debtors' assertion that the Agricann claims were worthless, and noted that those claims related specifically to the growing and selling of marijuana.

-15-

What this court deems to be more instructive is the analysis in *The Green Earth Wellness Center, LLC v. Atain Specialty Insurance Company,* 163 F.Supp. 3d 821 (D. Colo. 2016). That case involved a claim by a marijuana grower for recovery on an insurance policy when the grower's plants were damaged in a fire. The issue the court was presented with relevance here was whether the insurer could avoid its obligations to the insured under its insurance policy based upon public policy concerns since some of the property lost in the fire was covered by the CSA. The court rejected the position of the insurer that the demand for payment under the policy was a demand for monetary replacement of marijuana plants and accessories. In doing so, the court stressed that the dispute was over interpretation and application of mutually agreed upon contract terms, and that is why the insurer would be called upon honor its contractual promise to pay money to the insured for its marijuana losses.

Contrary to the bankruptcy court's holding in *Burton* that proceeds from litigation arising between two entities engaging in marijuana business must therefore be proceeds from a marijuana business, this court aligns with the *Green Earth* court and holds that any potential sale of a membership interest in an LLC is just that—the sale of an ownership interest whose rights are bundled in applicable articles of incorporation or operating agreements. It is not necessarily the proceeds of a marijuana business because the LLC is itself engaged in marijuana business. Likewise, a claim against fellow LLC owners for owed proceeds are not necessarily a claim for the profits of a marijuana business, but a claim for the entitlements owed to the

holder of ownership interests.

Further still, no party has suggested, nor does the court know of a reason, why the trustee would violate the CSA or any other law were he to offer to sell, and actually sell, such intangible assets of the estate such as domain names.

In sum, possible sales of interests in LLCs, enforcement of LLCs' contractual rights and sale of other intangibles related to marijuana, but not directly implicated by the language of the CSA, are not sufficient for this court to find cause to dismiss an otherwise eligible individual debtor's chapter 7 case.

**D. The Chapter 7 Trustee's Options**

There are many tools in the bankruptcy toolbox to deal with debtors who misbehave pre- or post-petition. For instance, a debtor making a false oath or refusing to obey a lawful order of the bankruptcy court can be the basis to seek denial of discharge by the UST, the case trustee or any other creditor.[11] Debtors who misbehaved pre-petition may be subject to a determination of non-dischargeability of certain debts.[12]

Another rarely used tool in that toolbox is available if the trustee chooses not to continue in that role, and no other private panel member will do so. That tool is found in 28 U.S.C. § 586(a)(2), permitting the United States Trustee to step

---

[11] Bankruptcy Code Sections 727(a)(4) and 727(a)(6)(A).

[12] Dattani Trust has already filed A.P. No. 24-03023 alleging grounds for denial under Section 727 and to determine non-dischargeability under Section 523.

-17-

in and act as case trustee. *Balser v. Dept of Justice, Office of U.S. Trustee,* 327 F.3d 903 (9th Cir. 2003). See also *In re Tyrone F. Conner Corp, Inc.,* 140 B.R. 771, 780-781 (Bankr. E.D. Cal. 1992).[13] The UST can step in here if need be.

All experienced bankruptcy practitioners are quite familiar with Section 554, another available tool. They know that property of the estate that is burdensome to the estate can be abandoned. If the trustee here cannot realize value from the assets because of CSA-related prohibitions, the solution is there waiting. The fact that an abandoned asset is returned to the debtor is of no legal significance; it is simply a legal result. Before the trustee, whoever that turns out to be, moves to abandon, the Dattani Trust or any other creditor will have an opportunity to offer to acquire any such available intangible non-exempt assets and exploit them free of any bankruptcy connections, thus ensuring that Debtor will not regain control of them.

Thus, as stated above, if the trustee can make a case for enforcement of Debtor's rights vis-à-vis Grassy Castro's co-owners, he presumably will be enforcing contractual rights, not some sort of specific performance obligations to deliver

---

[13] In that case the court's displeasure was clear: "As the UST has failed to diligently and realistically conduct a search for a Chapter 11 trustee, and refuses to look further, the Court finds and holds that necessity exists as contemplated under 11 U.S.C. § 321(c) for the UST to serve as trustee for the interim. The UST shall forthwith assume all duties of the Chapter 11 trustee proscribed under the Code and shall serve until they (sic)are able to appoint another candidate."

marijuana, just as the court held in *Green Earth*. If that supposition proves to be unfounded, the trustee can abandon any claim against those co-owners.

The same result follows if the trustee determines that he cannot capitalize on the potential value of the intangibles such as the domain names and the ownership of Caliverde and the other wholly or partially owned LLCs.

## IV. CONCLUSION

The Dismissal Motions do not justify a discretionary dismissal of this case. There is no clear basis to disqualify a debtor from the benefits of chapter 7 because of perceived but unanalyzed difficulties the chapter 7 trustee might face when administering the bankruptcy estate. To somehow equate the trustee's dilemma with cause to deny this debtor's right to file and stay in chapter 7 has not been explained by the Dismissal Motions, and the court would be abusing its discretion under Section 707(a) to grant them for the reasons argued in those motions.

By separate orders issued concurrently with this Memorandum Decision, the court will deny the Dismissal Motions for the foregoing reasons.

*** END OF MEMORANDUM DECISION ***